[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1084 
The defendant, Frank M. Kitchens, appeals from a judgment for $350,000 in favor of the plaintiff, Bobby J. Maye, in an assault and battery action brought for damages for personal injuries suffered when Kitchens allegedly shot Maye in the chest and groin. The principal issues are whether the trial judge erred in declining to recuse himself; in refusing to grant a continuance; in admitting evidence of a criminal prosecution of Kitchens for the shooting; and in denying a request for a remittitur without holding a hearing.
On the evening of the shooting, Maye and his family were helping his foster brother, Robert Turley, Sr., move Turley's belongings from a trailer that had caught fire earlier that day. Turley's trailer was located on Kitchens's property. Turley testified that late that afternoon, after the firefighters had left, he saw Kitchens walking over his property and firing weapons into the air. Later that evening, as Maye, his wife, and their two children were leaving in their pickup truck, several shots hit the truck. After telling his wife to get the police, Maye got out of the truck and began walking toward Turley's trailer to see if Turley and his wife had been hurt. Kitchens shot him in the chest. As Maye continued toward the trailer, Kitchens shot him again, in the groin. When Maye reached the trailer, he took Turley's shotgun and fired two rounds into the air. After Maye's shots, Kitchens fired once more and then stopped. Maye ultimately reached a hospital, where he underwent surgery. The gunshot wound to Maye's chest resulted in the loss of his spleen. The evidence indicated that Maye suffered great pain and was hospitalized for 18 days.
In July 1990, Maye filed a complaint alleging assault and battery, demanding $100,000 in compensatory damages and $250,000 in punitive damages. After denying Kitchens's motion to dismiss, the trial judge entered an order setting the case for trial on June 28, 1991. On June 27, 1991, Kitchens filed a motion to continue, claiming as grounds the unavailability of a rebuttal witness. Granting the motion, the trial judge set the case again for trial on December 20, 1991.
At the beginning of the nonjury trial, Kitchens's attorney[1] filed in open court a second motion for continuance. In support of this motion, Kitchens's counsel asserted that both Kitchens and Mrs. Ezell Breedwell, a witness to the incident who lived with and took care of Kitchens, were ill and consequently unable to appear in court. Although Kitchens's attorney could not verify the illness with any statement from a physician or hospital, he did call Dan Davis, a neighbor, who testified that both had appeared sick when he visited them the day before the trial.
The trial judge denied the motion to continue, on the ground that there was no verification of the illnesses. During oral argument on the motion, the trial judge informed Kitchens's attorney that earlier that morning, before the proceeding and in the presence of Maye's attorney, he had spoken to an officer of the Heflin Police Department. The judge said that the officer said he had been to Kitchens's residence the previous day with a rescue squad and that, although Mrs. Breedwell appeared ill, "he could not tell that the defendant was sick or not [sic]." The trial judge also stated:
 "At that point I asked him [the officer] to go back out to the residence this morning to see if Mr. Kitchens was there. Then the chief of police called back and reported that the defendant was not there."
The court denied the motion for a continuance, and the plaintiff began presenting his case.
When the court convened again after a morning recess, Mrs. Breedwell appeared, *Page 1085 
but not Kitchens. Kitchens's attorney renewed his motion for a continuance. He produced Kitchens's niece, Annie Lipscomb, who testified that she had taken both Kitchens and Mrs. Breedwell to a local hospital earlier that morning. Lipscomb stated further that the two had appeared weak and sick; that at the hospital Kitchens had received a shot of penicillin; and that Mrs. Breedwell had received prescriptions for cough medicine and an anti-diarrheal medication. Lipscomb also remarked that Kitchens did not appear to have been drinking that morning.
At the request of Maye's attorney and with the agreement of Kitchens's attorney, the court recessed to telephone Dr. Charles Williams, the physician who had examined and treated Kitchens and Mrs. Breedwell. After Kitchens's attorney placed the call, Dr. Williams confirmed to the trial judge that Kitchens had health problems, but told the trial judge, "Frankly, I think he was too drunk to appear in court."
The trial judge denied Kitchens's renewed motion for continuance. The trial judge stated that he was aware of defense counsel's reputation for dilatory tactics and that he would not continue the trial because Kitchens was too drunk to appear. Kitchens's attorney then suggested the trial judge should recuse himself, asserting that the judge had shown bias against the defendant's counsel. The trial judge replied:
 "It is not appropriate for the Court to recuse himself. I have no biased opinion in this case. I don't even know the facts of this case. I don't know any of the parties in this case. This is the first time you have ever appeared in my court and obviously the first time you have ever had . . . a chance to continue a case in my court.
 "It does seem strange that the first case you have with me, this is the second motion I've had to continue it. I'm not . . . going to continue the case because your client is too drunk to appear in court."
Kitchens's counsel again moved to continue, arguing that no tests had been undertaken to confirm that Kitchens was indeed drunk. In response to this motion, the trial judge called another recess, telephoned the sheriff, and then stated in open court: "[The sheriff] is going to find Mr. Kitchens and bring him up here. I will then determine whether or not he can proceed with the trial of this case." Later that day, after testimony from other witnesses for the plaintiff had been heard, Kitchens was brought before the court. After a brief colloquy between the trial judge and Kitchens, the trial judge concluded that Kitchens was drunk, observing for the record that Kitchens had staggered into the courtroom with bloodshot eyes, smelling of alcohol, Listerine, and chewing gum, and had behaved belligerently toward the court. The trial judge again denied Kitchens's motion to continue. With Kitchens's consent, a test was administered to determine his blood-alcohol content; it revealed that at 2:34 p.m. that day, his blood-alcohol measured .255%, more than two and a half times the amount at which the State of Alabama statutorily presumes a defendant to be under the influence of alcohol in civil or criminal actions involving the use of a motor vehicle. § 32-5A-194(b), Ala. Code 1975 (0.10%).[2]
Before resting his case, Maye offered into evidence a certified copy of the case action summary from the criminal prosecution of Kitchens for the shooting that is the subject of this civil action, State v. Kitchens, CC-90-89 (Cleburne County), for the purpose of determining how much, if any, punitive damages should be awarded. The case action summary included bench notes describing a settlement agreement between Kitchens and the State. Under its terms, in exchange for Kitchens's plea of guilty to assault in the third degree, the State agreed to impose no jail sentence. The bench notes also stated that under the agreement the plea would not be entered until disposition of this civil case. The trial court admitted the summary, over Kitchens's objection. *Page 1086 
After considering all the testimony and Kitchens's deposition, the trial judge entered a $350,000 judgment in favor of Maye. Although Maye had asked for $100,000 in compensatory damages and $250,000 in punitive damages, the trial judge did not specify which part of the judgment constituted compensatory damages and which part punitive damages:
 "Judgment is hereby entered in favor of the plaintiff and against the defendant in the amount of Three Hundred Fifty Thousand Dollars ($350,000), as damages in this proceeding, for which let execution issue."
(Emphasis added.)
On February 7, 1992, Kitchens filed a "Motion for new trial or to alter and amend the judgment and request for oral argument." Among the grounds cited in his motion were the denials of the motion to continue, an alleged failure to prove certain items of damages, excessiveness of the "verdict," and an alleged failure to prove any "vindicative damage" or any malice or intent to injure on which to base an award of punitive damages. In support of his motion for new trial, Kitchens submitted two hospital reports on Kitchens and Mrs. Breedwell prepared during their visit the morning of the trial and an affidavit by Kitchens in which he generally denied shooting Maye, claimed that the damages were excessive, and asserted that the trial judge had erred in not continuing the trial when, he says, both he and Mrs. Breedwell were too ill to appear. In March 1992, Kitchens filed another motion to permit oral argument on his motion for new trial. Without holding a hearing, the trial judge entered an order in March 1992 denying Kitchens's motion for new trial.
The first issue is whether the trial judge committed reversible error in denying Kitchens's suggestion of recusal. Kitchens argues that the trial judge's extrajudicial communication with members of the Heflin Police Department prior to the trial concerning Kitchens's physical condition, his remarks concerning defense counsel's reputation for dilatory tactics, and his repeated refusals to grant Kitchens's motions to continue the trial compelled his recusal. Kitchens contends further that the trial judge's actions and his attitude toward the defendant, in the aggregate, establish a pattern of conduct evincing personal bias or prejudice that required his recusal.
Canon 3C, Alabama Canons of Judicial Ethics, provides in part:
"C. Disqualification:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."
In United States v. Grinnell Corp., 384 U.S. 563, 583,86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793 (1966), the United States Supreme Court stated:
 "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."
(Emphasis added.) See also Medical Arts Clinic, P.C. v. Henry,484 So.2d 385, 387-88 (Ala. 1986) (quoting Grinnell); Ex parteLarge, 501 So.2d 1208, 1210 (Ala. 1986) (quoting Grinnell). Bias and prejudice are not presumed, Wells v. Wells, 346 So.2d 442
(Ala.Civ.App.), cert. denied, 346 So.2d 444 (Ala. 1977); the movant has the burden of proving that the judge was biased or prejudiced, Reach v. Reach, 378 So.2d 1115
(Ala.Civ.App. 1979), cert. denied, 378 So.2d 1118 (Ala. 1980).
The first argument, that the trial judge's inquiry into Kitchens's condition prior to trial gave him personal knowledge of disputed facts, is misplaced, because the information did not concern the merits of the case, but related to the trial court's management of the case. Moreover, the court's subsequent efforts during the proceedings to determine Kitchens's physical condition superseded the earlier information and formed a sufficient basis for the denial of a continuance. Thus, there was no basis for recusal on the ground of extrajudicial knowledge of the facts. The trial judge's remarks about *Page 1087 
defense counsel's reputation for dilatory tactics do not require reversal either. The trial court stated:
 "I'm sorry for any personal nature that you took the remarks [sic]. I don't feel like I have any problem being fair in this case. I don't have any problem continuing to sit in the case. I do have a problem with a man who is too drunk to appear in court. That's what I have a problem with.
 "I know your general reputation. I was simply stating your general reputation as I knew it. Maybe you weren't aware of that reputation, but now is the time for you to be aware of it."
The record clearly shows that the trial judge's decisions to deny Kitchens's repeated motions for continuance were either based on the initial absence of any medical verification of Kitchens's illness or based on what he later learned during the trial about the defendant's drunken condition, not on any ground that would have required the judge to recuse. The record reveals nothing in this proceeding that might reasonably call into question the trial judge's impartiality. Therefore, the court did not err in denying the suggestion of recusal.
Kitchens's second issue is whether the trial court erred in denying his motion to continue the trial because of his illness and because of the illness and consequent unavailability of Mrs. Breedwell, a material witness. A decision to deny a motion for continuance is within the sound discretion of the trial court and will not be reversed unless there has been an abuse of discretion. Scullin v. Cameron, 518 So.2d 695, 698
(Ala. 1987); Eady v. Stewart Dredging Constr. Co.,463 So.2d 156 (Ala. 1985); Madison v. Weldon, 446 So.2d 21 (Ala. 1984). In the circumstances of this case, the trial court did not abuse its discretion in denying Kitchens's motions for continuance.
Kitchens's attorney contended throughout the trial that Kitchens was sick and unable to appear in court. The trial court's repeated efforts to determine Kitchens's true condition, however, showed that although he had health problems, the main reason for his failure to appear was that he was drunk. The trial judge's personal observations of Kitchens's condition, preserved in the record, sufficiently establish that Kitchens was drunk early in the afternoon of the day of the trial. Although the trial judge specifically stated that he was basing his decision only on his own observations of Kitchens, the blood-alcohol test administered later confirmed his finding that Kitchens was drunk. Moreover, Dr. Williams's comment to the judge about Kitchens's condition when he was examined at the hospital supports the judge's finding that Kitchens was drunk earlier that morning as well. On the question of Mrs. Breedwell's inability to attend the trial because of illness, we note that she was in the courtroom after the morning recess. Thus, she was present well before Maye finished presenting his case, and there is nothing to show that she could not have given testimony for Kitchens; she could have been called out of order if necessary. Therefore, Kitchens's arguments based on her asserted inability to appear are meritless.
The third issue is whether the trial court committed reversible error by admitting into evidence over Kitchens's objection a certified copy of the case action summary containing the terms of the settlement agreement in the criminal prosecution.
A prior criminal conviction can be used in a subsequent civil action arising out of the same transaction or occurrence, as substantive, although not conclusive, evidence of the acts underlying the crime committed; however, such a conviction is inadmissible as substantive evidence if an appeal of the conviction is pending. Cups Coal Co. v. Tennessee River Pulp Paper Co., 519 So.2d 932 (Ala. 1988); C. Gamble, McElroy'sAlabama Evidence § 269.05(5), at 606 (3d ed. 1977).
At the close of his case in chief, Maye offered the case action summary for the limited purpose of showing a basis for an award of punitive damages. Citing § 6-11-23, Ala. Code 1975, Maye argues that any relevant evidence is admissible on the issue of punitive damages. Kitchens responds with the argument that although the case action summary was admitted for the limited purpose of determining punitive damages, it was prejudicial *Page 1088 
error to admit it prior to a post-judgment motion to determine whether the punitive damages award was excessive.
Because the State agreed to seek no jail sentence, the plea to which Kitchens agreed in the criminal prosecution was pertinent to the issue of the amount of punitive damages. SeeGreen Oil Co. v. Hornsby, 539 So.2d 218, 223-24 (Ala. 1989). The evidence was offered not to prove that Kitchens shot Maye, but only on the question of the amount of punitive damages. In a jury trial, a court may admit evidence that is admissible for one purpose but not for another, so long as the court gives a limiting instruction that the evidence is to be considered only for the purpose for which it is admitted. See, e.g., Rice v.Blackmon, 559 So.2d 1070 (Ala. 1990); Leeth v. Roberts, 295 Ala. 27, 322 So.2d 679 (1975); Barnes v. State ex rel. Ferguson,274 Ala. 705, 151 So.2d 619 (1963). In a nonjury trial, such as this, the trial court may be presumed to apply this rule in its rendition of judgment. In some contexts, a nonfinal conviction might not be admissible on the issue of punitive damages, but because the summary was not offered as substantive evidence, because the plea was not final only because it was suspended until this action is concluded, and because the trial court may be deemed to have considered it only for its proper probative effect, we will not hold the trial court in error for admitting the criminal case action summary.
The fourth issue is whether the trial court erred to reversal in failing to itemize the damages as provided in § 6-11-1, Ala. Code 1975. Because Kitchens did not raise this issue in his motion for new trial, he has not properly preserved it for our review. This Court will not reverse a trial court's judgment on a ground raised for the first time on appeal. West Town PlazaAssocs. v. Wal-Mart Stores, Inc., 619 So.2d 1290 (Ala. 1993);Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala. 1988);Costarides v. Miller, 374 So.2d 1335 (Ala. 1979).
The fifth issue is whether the trial court erred to reversal by denying Kitchens's motion for a remittitur without granting Kitchens's request for a hearing on the excessiveness of the damages. Although the trial court did not itemize damages, Maye's complaint sought $100,000 compensatory and $250,000 punitive damages, so, absent any indication to the contrary, we will assume for purposes of this issue that the trial court's award is attributable to those demands.
Rule 59(g), Ala.R.Civ.P., provides that a post-trial motion "shall not be ruled upon until the parties have had opportunity to be heard thereon." This Court has held that when a hearing on a motion for new trial is requested pursuant to Rule 59(g), the trial court errs in not granting it. Walls v. Bank ofPrattville, 554 So.2d 381 (Ala. 1989); Greene v. Thompson,554 So.2d 376 (Ala. 1989); see also Frederick v. Strickland,386 So.2d 1150 (Ala.Civ.App. 1980). The record shows that Kitchens made two requests for a hearing to conduct oral argument, one with his motion for new trial and another a month after the filing of his first motion. We hold that the trial judge erred in not affording Kitchens an opportunity to be heard on his motion for remittitur or new trial.
This error, however, is not necessarily reversible error. Under Rule 45, Ala.R.App.P.,[3] the failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it "probably injuriously affected substantial rights of the parties." See Greene, 554 So.2d at 380-81; Walls, 554 So.2d at 382. In Greene v. Thompson, supra, this Court formulated a test to determine when the denial of a Rule 59(g) request for a hearing is harmless error:
 "Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds *Page 1089 
asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court."
554 So.2d at 381. Kitchens argues that the trial judge's denial of his motion for a new trial, which included a request for a remittitur, see Rule 59(f), without granting his request for a hearing, injuriously affected a substantial right by depriving him of an opportunity to present evidence that the award of punitive damages was excessive. He contends that denying him an opportunity to be heard and to present evidence deprives him of his property without due process, in violation of § 13 of the Alabama Constitution of 1901. In support of this argument, Kitchens stresses that one purpose of the post-judgment hearings mandated by Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218
(Ala. 1989), is to determine whether the judgment is so large that it goes beyond an amount necessary to punish the defendant and to deter the defendant and others from similar conduct.[4]
Given the sparse record before us, we cannot say that the failure to grant a hearing on the motion for remittitur was harmless error. For example, the record is devoid of any evidence of Kitchens's financial position. Notwithstanding the egregiousness of Kitchens's conduct, we cannot say, without considering such evidence, that Kitchens's challenge to the amount of the punitive damages award has no probable merit.
We remand this case for the trial court to hold a hearing on the question of excessiveness of the punitive damages award, in light of the factors set forth in Hammond and Green Oil.
REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Kitchens's trial attorney is not his attorney on appeal.
[2] Upon request by Maye's attorney, the trial judge included the blood-alcohol test results in the record, but noted that they were not being considered to determine whether to grant Kitchens's motion for a continuance. The trial judge expressly grounded his decision on his personal observations of the defendant in the courtroom.
[3] Rule 45 provides:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
[4] In his brief, Kitchens also cites § 6-11-23(b) to support his argument that the trial court was required to conduct a post-trial hearing concerning the amount of punitive damages and their economic impact. Section 6-11-23(b) provides, in pertinent part, that the trial court "shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages."