MONROE, Judge.
This is an appeal from a judgment entered on a jury verdict. '
The trial testimony tends to show the following: On Friday, March 3, 1995, Margaret Wesson and several members of her family went to the automobile dealership operated by the Darwin Dobbs Company; Wesson was interested, in purchasing a car. At the dealership, Wesson talked with Jerry Richardson, a salesman, about purchasing a red 1994 Pontiac Sunbird automobile that she saw in the lot. Wesson testified that Richardson said he would give her $2,000 for her 1988 Pontiac Grand Am if she traded it in for the Sunbird. Wesson also testified that after test-driving the Sunbird, she told Richardson that she did not really like it after all and that she would let him know if she decided to buy it. A “buyer’s order” was prepared on the Sunbird that day, but Wesson does not remember seeing it and it does not contain her signature. Richardson had obtained certain information from Wesson and prepared a customer statement reflecting information such as the cost of the Sunbird and the amount of her trade-in. Richardson submitted this information to First Alabama Bank, which approved financing for Wesson’s purchase of the Sunbird1 that same day.
Wesson returned to the dealership the following day, Saturday, March 4, 1995. Wesson informed Richardson that she wanted to purchase a green 1994 Pontiac Grand Am that was on the lot, rather than the Sunbird. Richardson assumed that financing for Wesson’s purchase of the Grand Am would be approved because financing had been approved for the Sunbird. Wesson testified that she signed all the paperwork for the purchase of the car on March 4, including a note obligating her to pay First Alabama Bank. She also signed documents transferring the title to her 1988 Grand Am. Wesson testified that Richardson told her she would be given'the same $2,000 for the trade-in that she was offered if she traded it in on the Sunbird. She testified that Richardson told her that financing had been approved, and that she had purchased the car that day, March 4. She drove off in the 1994 Grand Am, leaving her 1988 Grand Am behind.
Wesson testified that on Tuesday, March 7, 1995, after she had already purchased a license plate for the Grand Am, she was telephoned by a lady working at the Darwin *992 Dobbs Company; the lady informed her that her financing had not been approved and that she would have to return the car. Richardson and the Darwin Dobbs Company contend that Wesson was informed that she had to have a cosigner to be approved for financing; however, Wesson testified that nothing was mentioned to her about having a cosigner. Wesson spoke with Richardson that day and told him that she would just bring the 1994 Grand Am back and get her 1988 Grand Am, but he informed her that her 1988 Grand Am had already been sold to a wholesaler. She testified that she was very upset by this information, and that she asked him to tell her who had purchased the car, but that he would not tell her. She further testified that she asked Richardson what she was supposed to do, since her car had been sold and she had to return the car she thought she had purchased. He told her she could buy the Sunbird. She testified that she did not want the Sunbird but that she had to have a car to get to work.
Wesson testified that, on Wednesday, March 8, 1995, her husband returned the 1994 Grand Am to the dealership, because she was too upset to take it back herself. Wesson’s husband came home with the Sun-bird, and Wesson went to the dealership later that day and signed the paperwork for its purchase. The documents showed an allowance of $1,300 for the trade-in, although she testified that she had thought it was supposed to be $2,000. Wesson testified that she was not satisfied with the Sunbird’s performance because, she said, it jerked, jumped, and skipped. She also testified that she and her husband took the ear to the dealership twice for repairs and that she also took it to another dealership for repairs. In addition, she testified that in March and April of 1995, she telephoned Richardson several times to complain about the performance of the Sunbird, and she testified that he assured her he would find her another car if she continued to be unhappy with the Sunbird. When Richardson stopped working for the Darwin Dobbs Company, Wesson went to see Fred Dobbs, an owner of the dealership. She testified that Mr. Dobbs told her that he would not take the Sunbird back or find her another car. She testified that she told him she had already consulted an attorney, who had advised her that she could sue the dealership, and that Mr. Dobbs responded by saying that she could sue if she wanted to but she would not win.
In May 1995, Wesson purchased another car at a different dealership and traded in the Sunbird. She sued Darwin Dobbs Company and Richardson on March 4,1996, alleging misrepresentation, suppression, and deceit. A jury awarded Wesson $400,000 in damages. Dobbs and Richardson moved for a new trial or for a JNOV; their motion was denied by operation of law, pursuant to Rule 59.1, Ala.R.Civ.P. Dobbs and Richardson appealed to the Alabama Supreme Court, which transferred this case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
First, Dobbs and Richardson argue that the trial court improperly granted Wesson’s oral motion in limine, which they contend deprived them of an opportunity to cross-examine Wesson regarding the dates alleged in her complaint. It is well settled that the trial court has broad discretion in evidentiary matters, including rulings on motions in ¿mine. Bush v. Alabama Farm Bureau Mut. Cas. Ins. Co., 576 So.2d 175 (Ala.1991). Although motions in limine are generally not appealable, this motion was made and granted at the time of trial, so that it was not necessary for Dobbs and Richardson to renew the objection to preserve it for appeal. See generally, Perry v. Brakefield, 534 So.2d 602 (Ala.1988). The complaint alleges:
“[P]laintiff ... Wesson received a telephone call on or about March 6,1995, from a representative of the Defendant Darwin Dobbs. She was told words to the effect that the bank did not approve her financing and that she had to return the 1994 Grand Am to the Defendant Darwin Dobbs.”
Dobbs and Richardson planned to impeach Wesson by using this statement ás a prior inconsistent statement, because Wesson testified that the telephone call came on March 7. We note that the complaint does not state definitely that she received the telephone call on March 6, but states that it was received “on or about March 6.” Thus, the statement is not actually inconsistent with her testimony that the telephone call came on March 7. In addition, it is undisputed that the complaint was prepared by Wes *993 son’s attorney and that Wesson did not sign it. Thus, it is not a statement made by her. Because the complaint does not contain statements made by Wesson, in impeaching her on this statement it would be necessary to ask Wesson what she told her attorney. However, such a communication is protected by the attorney-client privilege. Rule 502, Ala. R. Evid. Thus, we cannot say that the granting of the motion in limine was improper. We note, as did the trial court, that Dobbs and Richardson were free to use other means of impeachment during cross-examination, such as answers to interrogatories and deposition testimony.
Dobbs and Richardson also argue that the jury verdict was against the great weight and preponderance of the evidence. It is well settled that “jury verdicts are presumed to be correct, and [that] no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence.” Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992). Dobbs and Richardson argue generally that Wesson did not prove her ease, because, they assert, much of her testimony was uncorroborated and/or her testimony conflicted that of defense witnesses. Generally, an appellate court will not disturb the jury’s decision on a question of fact, because the court indulges all favorable presumptions as to the correctness of the jury’s decision. Winn-Dixie Montgomery, Inc. v. Henderson, 371 So.2d 899 (Ala.1979). In addition, it is within the province of the jury, not the appellate court, to determine what witness is telling the truth. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala.1986). A review of the transcript shows that Wesson presented substantial evidence supporting her fraud claims. For instance, she presented evidence that Richardson misrepresented to her that financing for the 1994 Grand Am had been approved, and that she transferred title to her 1988 Grand Am in reliance on this misrepresentation. She also presented evidence that Richardson misrepresented that she would receive $2,000 for her 1988 Grand Am; that she had purchased the 1994 Grand Am; and that her 1988 Grand Am had been sold and could not be recovered. Naturally, Dobbs and Richardson presented evidence that conflicted with that presented by Wesson.. After reviewing the evidence, we cannot say that the jury verdict is against the weight and preponderance of the evidence.
In addition, Dobbs and Richardson argue that the jury verdict was “the product of misconduct, bias, passion, prejudice, corruption, improper motive, confusion, sympathy, speculation, compromise, or failure to follow instructions from the court.” In support of this argument, Dobbs and Richardson contend that Wesson’s attorney made an improper argument to the jury. The only alleged improper argument that Dobbs and Richardson preserved for appeal is a statement made by Wesson’s attorney during the closing argument:
“[WESSON’S ' ATTORNEY]: And they’re not only doing it in Alex City. They’re doing it from Huntsville to Mobile to — ’.’.
“[DEFENDANTS’ ATTORNEY]: I’m going to object.”
“THE COURT: Ladies and gentlemen, I sustain the objection. This case concerns this dealership and this dealership only.”
Dobbs and Richardson’s attorney did not object to the curative instruction given by the judge, did not request an additional curative instruction, and did not move for a mistrial. A trial court has discretion in determining the propriety of closing arguments. Russell v. Mathis, 686 So.2d 241 (Ala.1996). To warrant a new trial, a statement in an argument must be “so ‘grossly improper and highly prejudicial as to be ineradicable from the minds of the jurors, notwithstanding a timely admonition from the trial judge.’ ” Id. at 243, quoting Patrick v. Femco Southeast, Inc., 590 So.2d 259 (Ala.1991). Considering the curative instruction given by the judge, and the entirety of the evidence presented at trial, we cannot say that the statement was so prejudicial that it would warrant a new trial. See Campbell u Williams, 638 So.2d 804 (Ala.1994), cert, denied by Campbell v. Williams, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).
On the same issue, Dobbs and Richardson argue that the jury’s verdict was influenced by an improper clarifying instruction from the trial court. The transcript shows that the jury interrupted its delibera *994 tions and asked the trial court: “What were the five points that the plaintiff was supposed to prove?”
“THE COURT: ... [W]hat I think you’re referring to is a reference that plaintiffs counsel made during opening statement as to five representations that the plaintiff claims the defendants made.
“Now, the plaintiff does not have to prove each statement alleged to be a misrepresentation. But you must be satisfied that some misrepresentation was made and that all of the elements of some form of fraud were proved.
“Now, I’ll charge you concerning the various elements of frauds alleged if you like. But I have already done that ...”
The trial court also reinstructed the jury:
“THE COURT: The various forms of fraud that I charged you on are as follows: I charged you on a willful misrepresentation and the elements of that. I charged you concerning reckless misrepresentation. I charged you concerning deceit. And I charged you concerning suppression of truth.”
Dobbs and Richardson’s attorney made the following objection outside the presence of the jury:
“For the benefit of the record I think in the situation it presented itself the Court did as good a job as the Court could do. But it appeared to me that they’re hopelessly confused. And on that basis we would object to the question and response.”
On appeal, Dobbs and Richardson contend that the trial court’s additional instruction gave undue prominence to evidence in Wesson’s favor. First, we note that Dobbs and Richardson did not object on this basis at trial, but merely objected based on the jury’s appearing to be “hopelessly confused.” Dobbs and Richardson cannot now argue a different ground supporting their objection. Rule 51, Ala.R.Civ.P. Even if we were to consider their new ground, we could not say that the trial court’s additional instruction gave undue prominence to Wesson’s evidence. Dobbs and Richardson agree that the jury was asking about what Wesson had to prove. The court did not reference any specific evidence presented, and we cannot see how the additional instruction could have unduly prejudiced Dobbs and Richardson.
Dobbs and Richardson also argue that the jury’s award of damages was grossly excessive. The jury entered a general verdict, which stated, “We the jury find for the plaintiff and against Dobbs and Richardson and assess the pláintiffs damages at $400,-000.” Neither party objected to the verdict form. In the ease of City Realty, Inc. v. Continental Cas. Co., 623 So.2d 1039 (Ala. 1993), the Alabama Supreme Court was faced with a similar situation. In City Realty, the jury, using a general verdict form, awarded damages in the amount of $300,000. The trial court determined that only $5,000 of the award could have been compensatory damages, so that the remaining $295,000 must have been an award of punitive damages. The trial court also determined that the amount of punitive damages awarded was excessive, and it reduced the award by $45,-000. On review, the Supreme Court held that the trial court erred by apportioning the jury award into punitive and compensatory damages. It stated:
“[The plaintiffs] argue that it was ‘pure speculation’ for the trial court ‘to designate what portion of the verdict was compensatory and what portion was punitive.’ We agree. Who can say with certainty that the jury did not award, for example, $300,-000 in compensatory damages, meaning, under the trial court’s reasoning, that a remittitur of $295,000 would have been in order. We do not suggest that this was the case. To the contrary, we suggest that any such calculations are speculative and improper. ‘[A] court’s right to amend a jury verdict after discharge of the jury is limited to matters of form or clerical errors that are apparent from the record ... Alabama Farm Bureau Mut. Cas. Ins. Co. v. Williams, 530 So.2d 1371, 1377 (Ala.1988).’ ”
City Realty, 623 So.2d at 1045.
The Supreme Court went on to hold that it could not disturb the $300,000 verdict, either:
“We do not disturb the $300,000 verdict. We cannot say whether it is right or wrong; we do not know what it represents, and it could be either right or wrong, i.e., *995 either appropriate or excessive. We decline to remand this case for further determinations that would shed light on this issue, because the parties did not object to the undesignated verdict at trial.”
City Realty, 623 So.2d at 1046. In Wesson’s case, none of the parties objected to the undesignated verdict. Thus, we are bound by the Supreme Court’s decision in City Realty — we cannot say whether the $400,000 verdict is right or wrong, because we do not know what it represents. Therefore, we will not disturb it.
Finally, Dobbs and Richardson argue that the trial court erred by not holding a hearing on their motion for a new trial or for a JNOV. Rule 59(g), Ala.R.Civ.P., provides that post-trial motions “shall not be ruled upon until the parties have had opportunity to be heard thereon.” Although a trial court errs by not granting a hearing when one has been requested pursuant to Rule 59(g), that error is not necessarily reversible error. Kitchens v. Maye, 623 So.2d 1082 (Ala.1993). The following test has been established to determine whether not granting a Rule 59(g) hearing is harmless error:
‘“Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.’ ”
Kitchens, 623 So.2d at 1088-89, quoting Greene v. Thompson, 554 So.2d 376, 381 (Ala. 1989). In addition, the failure to grant a hearing is reversible error only where it “ ‘probably injuriously affected substantial rights of the parties.’ ” Kitchens, 623 So.2d at 1088, quoting Greene, 554 So.2d at 380-81.
In their brief, Dobbs and Richardson do not argue that their substantial rights were probably injuriously affected. Instead, they argue generally that failing to grant a hearing is reversible error. Although Dobbs and Richardson do not address it, we note that their motion for a new trial contained a request for a remittitur, and that the Alabama Supreme Court has held that the failure to hold a hearing requested pursuant to Rule 59(g) is reversible error, where the motion for new trial contained a request for a remit-titur. Kitchens, 623 So.2d at 1089. However, under the law established in City Realty, supra, the trial court could not have ordered a remittitur, because the jury verdict did not distinguish between compensatory and punitive damages. Because we have resolved the issues presented in the motion for a new trial adversely to Dobbs and Richardson, and because Dobbs and Richardson have not shown that any of their substantial rights were probably injuriously affected, we hold that the failure to hold a Rule 59(g) hearing is not reversible error.
AFFIRMED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., and YATES, J., concur in the result.
THOMPSON, J., dissents.