PER CURIAM.
Mae Clark[1] petitions for a writ of mandamus directing the Etowah Circuit Court to vacate its order compelling her to arbitrate her claims against Blue Cross and Blue Shield (“BCBS”). Clark maintains that arbitration should not be compelled because (1) she says she did not agree to arbitrate any claims against BCBS and (2) she says Alabama law prevents the trial court from specifically enforcing the arbitration provision, which BCBS added to Clark’s insurance policy by an amendment. We deny the petition.
On March 1, 1991, Clark submitted an application to BCBS for a Medicare-supplement policy, referred to as BCBS’s “C Plus Medicare Select Contract” (“C Plus”). BCBS initiated coverage of Clark on that same date. Effective July 1, 1992, BCBS amended its C Plus contacts to include a mandatory binding-arbitration provision. In the summer of 1992, it sent a newsletter entitled “C Plus UPDATE” to all C Plus insureds; that newsletter noted the amendment to the contract and stated that an insured’s continued payment of premiums constituted acceptance of the arbitration provision. Thereafter, in November 1993, BCBS sent a revised contract containing the arbitration clause, along with a cover letter, to all C Plus insureds.
In the interest of clarity we present the following chronology of this case:
February 26, 1997 — Clark filed her complaint against BCBS.[2]
March 28, 1997 — -BCBS moved to dismiss the complaint or, in the alternative, to compel arbitration.
January 28, 1998 — The court heard oral argument; granted BCBS’s motion to compel arbitration; and stayed proceedings pending arbitration.
February 4, 1998 — Clark filed a “motion to alter, amend, or vacate” the order compelling arbitration, or, in the alternative, to order a jury trial on the issue whether Clark had agreed to arbitration.
February 6, 1998 — BCBS responded to Clark’s, motion.
February 10, 1998 — Clark requested oral argument on her motion.
February 11, 1998 — Clark petitioned this Court for a writ of mandamus.
March 3, 1998 — Clark filed an amended motion to alter, amend, or vacate the order compelling arbitration; this amended motion was based, in part, on the McCarran-Ferguson Act.
March 4, 1998 — The court conducted a hearing on Clark’s request for oral argument; received submissions from Clark; and held the case in abeyance pending this Court’s response to Clark’s petition for the writ of mandamus.
March 12, 1998 — Clark filed an amended petition for the writ of mandamus.
BCBS argues that several issues raised by Clark are not properly before this Court because they were not timely raised in the lower court; among them, BCBS challenges the issue concerning the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1012. It is clear from the record that the issue whether the McCarran-Fer-guson Act (the “McCarran Act”) operates to prevent federal law from preempting state law in Ms. Clark’s lawsuit was not *868 before the trial judge when he granted BCBS’s motion to compel arbitration on January 28, 1998. Clark raised the McCarran Act issue in the trial court on March 3, 1998, when she filed an amended motion to alter, amend, or vacate the trial judge’s order. On February 11, 1998, before filing the amended motion and raising the McCarran Act issue, Clark had filed the mandamus petition that is now before this Court. On March 4, 1998, the trial judge received submissions from Clark and postponed ruling on Clark’s amended motion to alter, amend, or vacate (which had raised the McCarran Act issue), until this Court ruled on Clark’s pending mandamus petition. We quote here the transcript of that March 4,1998, proceeding:
“The Court: This was a hearing set for reconsideration of a prior ruling of the Court in the case of Mae Clark versus Blue Cross and Blue Shield of Alabama. It’s CV-97-210.
“In this case, I had issued an order that arbitration could be compelled in this particular case. And because of that ruling, the plaintiff was required or obligated to take a mandamus proceeding within a particular period of time, fourteen days I believe. I also set a hearing for reconsideration of that motion and that’s what we’re here for today.
“And I’d indicated to at least defense counsel that while if the mandamus had been ruled upon, then we could know whether or not we could hold this hearing. And I didn’t indicate that to the plaintiffs attorney. But anyway we’re here this morning.
“What I’m going to do is since we’ve not heard from the mandamus at this time, I’m going to file these additional pleadings by the plaintiff in the Court, hold them in abeyance pending the outcome. And we’ll not hold the hearing today.
“And ... do you want to put something in the record about your position on the [mandamus petition]?
“[Plaintiffs attorney]: Yes, Judge.
“First of all, I wasn’t sure whether it was a fourteen-day deadline or not. Presently, there is no deadline, so I felt like I really filed the petition for mandamus prematurely, but I did it out of the abundance of caution to make sure that there was not a deadline.
“It’s my understanding when you file a premature appeal or even a premature petition for mandamus that it’s held in abeyance pending final disposition of the issues by the local court, and any new information would be again submitted to the higher court on the mandamus.
“And we came here for two purposes today; one, asking you to reconsider your prior ruling, and I had some more argument on that issue.
“And second of all, Judge, it's my understanding that you previously ruled that as a matter of law there was an arbitration agreement. And it’s my opinion that there’s still some factual issues that need to be resolved and that plaintiff has filed a timely [petition] to have those issues determined by a jury. It’s not set out in the law or the Rules of Civil Procedure exactly when a timely request for a jury trial has to be filed under the FAA because this is all a very new body of law that’s being basically imposed by preemption from federal law. So all the procedures have not been worked out.
“But I feel like in light of your last ruling that we have made a timely request for a jury trial. We’ve not waived the right to a jury trial.
“And also today, Judge, I’ve made some additional submissions. One, I’ve been trying to get from the Alabama Insurance Department their position on approval of arbitration agreements. And so I finally at 5:00 o’clock yesterday received a letter from general counsel for the insurance commission. His name is Michael Bownes. And he attached some draft guidelines for approval of arbitration provisions, which have not been adopted. And he says that the *869 ones they will adopt will be quite a bit different from these. So I just submit that.
“The Court: Okay. Those are in the pending record now.
“[Plaintiffs attorney]: And also I have submitted a copy of the insurance contract which basically shows that the contract as issued said this contract is issued and delivered in the State of Alabama and will be governed by the law of Alabama. And I quote that because that might come under the umbrella of the one case that says unless otherwise prohibited by law.
“The Court: Okay. Well, I understand you’re going to supplement your petition on mandamus with these submissions. We’ll wait for the outcome of that.
“[Plaintiffs attorney]: So, Judge, again, you’ve not ruled as to whether I’m entitled to a jury trial. We’re just going to kind of leave everything pending until the appellate court rules.
“The Court: We’ll wait. Yeah, I think that’s the proper thing to do.”
Clark filed an amended mandamus petition in this Court on March 12, 1998, arguing the merits of her McCarran Act issue.
The writ of mandamus is an extraordinary remedy. One petitioning for it must show 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. Ex parte Gates, 675 So.2d 371 (Ala.1996).
Absent in the present case is a showing that the trial judge has refused to perform an imperative duty. Trial judges in this state have a certain amount of discretion in conducting proceedings in their courtrooms and in controlling the flow of litigation. After almost a year of litigation with respect to the arbitration issue, the trial judge decided that it would be prudent to await a ruling by this Comb on Clark’s mandamus petition before addressing her McCarran Act issue. For all the trial judge knew, a ruling by this Court favorable to Clark on the issue whether she had agreed to arbitrate would have made it unnecessary for him to ever reach the McCarran Act issue. We can find no abuse of discretion on the trial judge’s part in merely holding Clark’s amended motion to alter, amend, or vacate in abeyance pending a ruling by this Court on her mandamus petition. The writ of mandamus was never intended to be used to set aside a trial judge’s ruling based on an issue that had not been properly raised at the time of the challenged ruling and on which the trial judge, exercising discretion, had postponed a decision pending a ruling from this Court that could possibly have rendered the issue moot. See Ex parte Isbell, 708 So.2d 571, 575 (Ala.1997), wherein this Court, citing Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala.1993), applied in the mandamus context, the longstanding rule that an appellate court will not reverse a trial court’s order on a ground raised for the first time in the appellate court. See, also, Ex parte Cypress, 275 Ala. 563, 156 So.2d 916 (1963).
The trial judge has stated on the record that he will fully consider Clark’s arguments with respect to the McCarran Act once this Court has ruled on her mandamus petition. Logically, the threshold question in this case is whether state law or federal law controls the question whether the arbitration provision is valid. If state law controls, then the arbitration provision that BCBS inserted into the policy is void. This Court should not make bad procedural law in an attempt to reach important constitutional questions that have yet to be ruled on by the trial judge.
The issue that is properly before this Court is whether the trial judge clearly erred in ruling that Clark had agreed to arbitrate any claims that she might have against BCBS. In support of its motion to compel arbitration, BCBS submitted two affidavits from Melissa Brisendine, a “marketing support” manager for BCBS. The first affidavit stated in pertinent part:
*870 “Effective July 1, 1992, all C Plus contracts were amended to include, among other things, an arbitration provision. A newsletter entitled the ‘C Plus Update’ was sent to all C Plus subscribers, including Mrs. Clark, in the summer of 1992 containing the amendment to the contract and stating that the subscribers’ continued payment of premiums constituted acceptance of the amended agreement....
“In November, 1993, a revised contract containing the arbitration clause was sent along with a cover letter to all C Plus subscribers, including Mrs. Clark....
“Mrs. Clark has continued to pay her C Plus premiums up to the present.”
The second affidavit, labeled as a “supplemental affidavit,” stated in part:
“A newsletter entitled ‘C Plus Update’ was mailed to all C Plus subscribers in the summer of 1992 containing the amendment to the contract and stating that the subscribers’ continued payment of premiums constituted acceptance of the amended agreement. This newsletter was mailed with proper postage and with Blue Cross’s proper return address to Lena Mae Clark (hereinafter ‘Mrs. Clark’) at 214 G Street, Anniston, Alabama, 36201. This mail to Mrs. Clark was not returned to Blue Cross.
“In November, 1993, a revised contract containing the arbitration clause was sent along with a cover letter to all C Plus subscribers. Again, this revised contract was mailed with proper postage and with Blue Cross’s proper return address to Mrs. Clark at 214 G Street, Anniston, Alabama, 36201. This mail to Mrs. Clark was not returned to Blue Cross.”
This evidence was sufficient to create a presumption that Clark received the materials informing her of the amendment to her contract.[3] See Security Ins. Co. v. Smith, 360 So.2d 280 (Ala.1978). The record before this Court contains no evidence tending to rebut this presumption. In fact, Clark’s memorandum to the trial judge in opposition to BCBS’s motion to compel arbitration acknowledged that she now suffers from dementia and, therefore, that “[i]t is unknown whether [she] received or read the amended contract.” What is before this Court are certain excerpts from the depositions of Clark and Billy Shelton (see n. 1). Nothing in Clark’s deposition indicates whether she received and read the 1992 newsletter (with its accompanying endorsement setting out the amendment to the contract) and the 1993 revised contract. Billy Shel-to'n testified that before 1996 Clark, although lacking a “good education,” had been able to handle her own affairs. He testified as follows:
“[Clark] was able to carry on her business and all that. She did open her mail, and she did read her mail. And what she did with that mail, I don’t know, because I didn’t interfere with that.”
Based on this sparse record, we cannot hold that Clark has a clear legal right to have the trial judge’s arbitration order set aside. The method adopted by BCBS to obtain the waiver of a policyholder’s constitutional right to a jury trial does cause us some concern, however. If the evidence had presented a fact question as to whether Clark had been notified of the *871 amendment; or had presented a fact question as to whether, if properly notified, she would have been unable to understand that she was agreeing to be bound by the arbitration provision; or had suggested fraud in the inducement, duress, or unconsciona-bility, then Clark would be entitled to the writ and the issue of arbitrability would be determined by a jury.[4] Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997). (The arbitration provision does not “clearly and unmistakably” provide for the issue of arbitrability to be determined by the arbitrator. See Allstar Homes, Inc. v. Waters; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).[5]) However, given the state of this record, and the fact that the United States Supreme Court has held that the validity of arbitration provisions is governed by general state-law contract principles, see Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the writ is denied.
Neither this Court, nor the Alabama Legislature, has the constitutional authority to invalidate an arbitration agreement under any state law that is applicable only to arbitration provisions. In other words, neither this Court, nor the Legislature, unless it enacts a law that directly and specifically relates to insurance, can sanction an arbitration-specific limitation, such as a requirement that insurance companies obtain written consent from policyholders before amending an insurance contract through the mail by adding an arbitration provision.[6] The United *872 States Supreme Court made this clear in Doctor’s Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). An across-the-board state-law requirement that written consent be obtained for an amendment made to any contract through the mail, including the addition of an arbitration provision, would probably pass constitutional muster; however, in the absence of such a sweeping requirement, any arbitration-specific limitation would have to be approved by Congress.
Clark is not precluded from now raising in the trial court her McCarran Act issue as a defense to BCBS’s motion to compel arbitration. Likewise, BCBS may now raise the issue whether 42 U.S.C. § 1395ss preempts state law by specifically authorizing the inclusion of arbitration provisions in Medicare Select policies. If the trial judge finds for Clark and holds that state law, not federal law, controls the arbitration issue, then BCBS may appeal from that order. A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990). If the trial judge finds for BCBS and holds that federal law authorizes arbitration provisions in Medicare Select policies in Alabama, then Clark may again seek mandamus review of the trial judge’s order. Ex parte Alexander, 558 So.2d 364 (Ala.1990).
WRIT DENIED.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur.
COOK and BROWN, JJ., concur in the result.
KENNEDY and JOHNSTONE, JJ., dissent.
LYONS, J., recuses himself.

. This petition for the writ of mandamus arises out of an action filed by Mae Clark in the Etowah Circuit Court. On November 4, 1997, she amended her complaint to add as a plaintiff her nephew, Billy Shelton, who has a power of attorney to deal with Ms. Clark's business. Billy Shelton is also named as a petitioner along with Ms. Clark.

. Clark alleged that BCBS had wrongfully sold her the Medicare-supplement policy, basing that allegation on a claim that the policy BCBS sold her was worthless because she was eligible for Medicaid benefits.

. The record contains a copy of a 1992 newsletter. Contrary to Brisendine’s affidavit, however, that copy does not state “that the subscribers' continued payment of premiums constituted acceptance of the amended agreement.’1 Clark’s insurance contract provided:
“By giving 30 days written notice to you, or your group, we may change the fees you pay for coverage under this Contract or any provision of this Contract. If you pay any fees after the notice, you thereby accept the new fees or changes in the Contract.
"The Contract can only be changed by written amendments, endorsements, and revisions signed by one of our officers and sent by us to you or your group. None of our officers, employees or agents can make any oral changes, such as by telephone. Nor may anyone waive or vary any provisions of this Contract except in writing, signed by one of our officers.”

. Although BCBS argues strenuously to the contrary, we do not believe Clark waived her right to a jury determination of arbitrability by waiting too long to assert her rights. In her initial response to BCBS's motion to compel arbitration, Clark stated:
"[BCBS's] motion to dismiss [or, in the alternative, to compel arbitration] should be denied as a matter of law for the reasons stated below. In the alternative, the Court should set a jury trial to determine if the arbitration clause is an enforceable contract.”

. The arbitration provision states:
"If, after exhausting the internal review procedures set forth above in Paragraphs A through E, you are still not satisfied with the resolution of your complaint, the parties shall resolve their disputes through binding arbitration pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and in accordance with the rules and procedures set forth in the American Arbitration Association's Dispute Resolution Program for Arbitration Of Insurance Claims disputes. If you request arbitration of this dispute, you will be provided with a copy of the rules and procedures of the American Arbitration Association, or you may request a copy at any time by writing to us at the address listed in Paragraph D....
"You have agreed to submit all claims or disputes you have that arise out of, or are in any way related to, the Contract, including any claims you may have against preferred or participating health care providers for medical care rendered pursuant to your Contract, for final and binding resolution by arbitration. Submitting all such claims to binding arbitration in exchange for the increased coverage and benefits available under the C Plus Medicare Select Contract prohibits you from filing any action in law or equity for breach of contract or tort prior to the rendering of the arbitration award. Once the arbitration award is entered, judgment upon the award may be entered in any Court having jurisdiction thereof. In accordance with the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., the award entered by the arbitrator shall not be set aside except upon the grounds set forth in the Federal Arbitration Act.
"If your complaint arises out of or relates to medical care or services you received from a PMD physician or other Preferred Care Provider, the Medical Director or des-ignee will forward your complaint to a neutral arbitrator.
"While Blue Cross and Blue Shield of Alabama has made these binding arbitration procedures available to the parties, Blue Cross and Blue Shield has no responsibility for your selection of a health care provider, nor for the quality of care rendered. Any award made at any stage of the arbitration proceeding is the responsibility of the health care provider and not of Blue Cross and Blue Shield of Alabama.”

. See Humana Inc. v. Forsyth, 525 U.S. 299, 119 S.Ct. 710, 716, 142 L.Ed.2d 753 (1999) (noting that the McCarran-Ferguson Act precludes the application of a federal statute that is not specifically related to the business of insurance if that statute would invalidate, impair, or supersede a state law that was enact *872 ed for the purpose of regulating the business of insurance).