Charles Crippen sued Charter Southland Hospital, Inc., doing business as Charter Pines Recovery Center, for the unauthorized release of his hospital records. Crippen claimed that the release constituted an invasion of his right of privacy, a breach of contract, an abuse of a privileged and confidential relationship, and a breach of a fiduciary relationship. Crippen claimed that as a result of the release he suffered psychological damage, mental anguish, aggravation of a pre-existing physical condition, humiliation, outrage, and physical pain and suffering. After discovery, Charter Southland filed a motion for summary judgment, which the trial court granted. Crippen appeals.
Crippen was employed by the U.S. Postal Service as an employee assistance coordinator ("EAC"). His basic duties involved counselling Postal Service employees and their families concerning alcohol and drug abuse, financial difficulties, employment pressures, and other interpersonal problems that an employee might be experiencing. It was a requirement of the Postal Service that a person hired as an EAC must be a recovering chemically dependent person.
In 1983, Crippen was admitted to Charter Southland for psychological and emotional problems. In 1985, he was readmitted for the same problems. Although Crippen was hospitalized for only six days during the 1985 stay, he was on sick leave from work for several weeks. Upon returning to work, Crippen submitted medical documentation from his doctor showing that he was fit for duty. The parties agree that the *Page 288 
Postal Service requires such documentation for a return to employment after an employee is on sick leave for more than 21 days.
Crippen's supervisor consulted with the Postal Service physician, and it was decided that Crippen should be examined by a Board-certified psychiatrist for an opinion relative to Crippen's ability to function as an EAC. Crippen was examined by Dr. Claude Brown, who, in a letter to the Postal Service physician, stated that it was his opinion that Crippen was not capable of performing the duties of an EAC. Based on Dr. Brown's opinion, it was decided that Crippen should be removed from his position as EAC and reassigned.
Crippen pursued an administrative appeal of his reassignment to the Merit Systems Protection Board, which granted him a hearing. During this hearing Dr. Brown admitted that he had reviewed Crippen's inpatient hospital records from Charter Southland, although Crippen had never given Charter Southland permission to release the records. At the conclusion of the hearing, Crippen was reinstated as an EAC.
A cause of action for the unauthorized release of medical records was first recognized by this Court in Horne v.Patton, 291 Ala. 701, 287 So.2d 824 (1973). InHorne this Court held that a medical doctor is under a duty not to make extra-judicial disclosures of the doctor-patient relationship and that a breach of that duty will give rise to a cause of action. Id.,291 Ala. at 708, 287 So.2d at 829. This Court further held that the unauthorized disclosure of intimate details of a patient's health may amount to such unwarranted publicization of one's private affairs with which the public has no legitimate concern as to cause outrage, mental suffering, shame, or humiliation to a person of ordinary sensibilities.Id., 291 Ala. at 709, 287 So.2d at 830. Finally, this Court held that the unauthorized release of medical records may amount to a breach of an implied contract of confidentiality on the part of the doctor. Id.,291 Ala. at 711, 287 So.2d at 832.
Charter Southland argues that, because the Postal Service could have required Crippen to produce his medical records, he had consented to the release by the terms of his employment contract. The fact that the Postal Service might require, as a condition of employment, that Crippen produce the records does not mean that Charter Southland can release the records without his consent or that he has consented to such a release. The employment contract is between Crippen and the Postal Service. If the Postal Service had ordered Crippen to produce the records (which it did not do), he could have refused to do so and resigned from the Postal Service.
Charter Southland next argues that Crippen failed to present any evidence demonstrating that the release of medical records proximately caused him any injury or harm.
Summary judgment should not be granted unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), A.R.Civ.P.McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins.Co., 437 So.2d 86 (Ala. 1983).
Crippen's treating psychologist, Dr. Daniel Koch, testified in his deposition that Crippen had been affected both emotionally and physically by the release of his medical records. In addition to Dr. Koch's testimony, Crippen's treating psychiatrist, Dr. John Cranton, testified in his deposition that Crippen had been adversely affected by the release of the records. This testimony is evidence from which a jury could determine that the release of Crippen's medical records had proximately caused him injury.[1]
Charter Southland's final argument is that Crippen suffered no legally cognizable injury or damage. Both Dr. Koch and Dr. Cranton provided testimony from which a jury could find that Crippen's prior mental condition had been aggravated by the release of his medical records. In addition, *Page 289 
they testified that Crippen's physical condition was worsened by the release of the records. A plaintiff may recover for the aggravation of a pre-existing condition. Wickham v.Cotten, 465 So.2d 388 (Ala. 1985), Cotton v.Gamble, 355 So.2d 350 (Ala. 1978).
The trial court erred in granting summary judgment in favor of Charter Southland.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.
[1] No claim of damages is made with respect to Crippen's reassignment by the Postal Service, because the Merit Systems Protection Board reinstated him as an EAC with back pay.