[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 859 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 860 
The defendant Donald Willis appeals the judgment of the trial court entered on the jury verdict and award of $16,000 in compensatory damages and $300,000 in punitive damages in favor of the plaintiff Charles Jeff Parker on his claims of abuse of process and conspiracy. Parker cross-appeals the judgment as a matter of law entered by the trial court in favor of the defendant Willis on Parker's claim of malicious prosecution. The gravamen of Parker's complaint is that Willis, conspiring with others, wrongfully filed and pursued an eviction action against Parker. We reverse and render the judgment in favor of Parker on his claims of abuse of process and conspiracy, and we affirm the judgment in favor of Willis on Parker's claim of malicious prosecution.
In 1986, Willis, as landlord, leased a building at 504 North Broadnax, Dadeville, Alabama, to 3-B Foods, Inc., acting through its owner Archie Black, for use as a grocery store. Before the lease expired, Black decided to discontinue his grocery store business; and Parker negotiated to buyout 3-B Foods, Inc. Parker also negotiated with Black and Willis for them to assign the lease to him as the tenant. On November 15, 1993, Parker, Black, and Willis agreed to an assignment of the lease. The assignment, drafted by Parker, read: "The Heretofore mentioned parties agree to, in accordance with conditions in paragraph 241, extend the lease to December 29, 1996.
"Lessor /s/Donald B. Willis Sr.
"Lessee /s/Archie Black
"Contingent upon
 "3-B Foods Receiving payment in Full by noon 11-18-93 (initialed by Archie Black and Jeff Parker) The Lessor and Lessee agree to pass all responsibility of fulfilling the lease of this building to Super Sav, Inc. Super Sav, Inc., agrees to be responsible for all conditions of the before lease as of 11/15/1993." *Page 861 
"Lessor Donald B. Willis, Sr."
On the date the assignment was executed, "Super Sav, Inc." did not exist. "Super Sav, Inc." was not incorporated until two days later, November 17, 1993.
The extended and assigned lease expired on December 29, 1996. At the beginning of the following year, 1997, Parker negotiated with Willis an oral lease of the property, from month-to-month for an indefinite period of time. At that time, Parker did not represent to Willis that Parker was leasing the property for any entity or person other than himself. During the time Parker was occupying the property, Willis told Parker Willis wanted to obtain a long-term lease on the property and repeatedly asked Parker to sign a long-term lease. Parker refused to sign any long-term lease because he was preparing to open a different grocery store at a different location in Dadeville.
On February 19, 1998, over a year into the oral lease, Willis sent Parker a letter informing him that he either could sign a long-term lease or could vacate the property before April 1, 1998. On March 4, 1998, Willis sent Parker a second letter requesting that Parker vacate the property by March 31, 1998, because he had not signed a long-term lease and Willis had negotiated and had executed a long-term lease for greater monthly rental with a new tenant who needed possession of the property by April 1, 1998.
On April 2, 1998, when Parker had not vacated the property, Willis filed an eviction action against Parker in district court. Parker's defense to the eviction action was that Willis had sued the wrong defendant to evict. Parker maintained that one of his corporations was the proper defendant to be sued for eviction because the assigned lease named the corporation as the assignee-lessee. However, at the time Willis filed the eviction action, neither he nor Parker could remember the identity of the assignee. Parker swore by affidavit, on two occasions, that the tenant of the property was "C.J.T., L.L.C. d/b/a Dadeville Super Sav." On the other hand, Willis maintained that Parker was the tenant under the assignment as well as the subsequent oral lease. Sometime later, after the district court had entered a judgment for Willis in the eviction suit against Parker and Parker had appealed the eviction to the circuit court, Parker asserted that the tenant and proper defendant for eviction was "Super Sav, Inc." When Parker showed Willis the 1993 instrument assigning the lease to "Super Sav, Inc.," and thereby convinced Willis, during his deposition, that "Super Sav, Inc.," rather than Parker, was the proper defendant to be sued for eviction, Willis promptly dismissed his suit against Parker and filed a second eviction suit, this one against "Super Sav, Inc." The district court then entered a judgment for Willis in his eviction suit against "Super Sav, Inc.," which appealed this eviction to the circuit court. During the pendency of the circuit court appeal of the second eviction action, the parties settled it.
Shortly after Willis filed his second eviction action, Parker sued Willis for malicious prosecution and abuse of process in filing and pursuing the first eviction action, the one against Parker personally. Thereafter, Parker amended the complaint to add a claim that Willis had conspired with others to perpetrate the alleged malicious prosecution and abuse of process. The trial court entered a judgment as a matter of law in favor of Willis on Parker's claim of malicious prosecution but denied judgment as a matter of law on Parker's claims of conspiracy and abuse of process and submitted them to the jury, which returned a verdict in favor of Parker and against Willis and awarded Parker $16,000 *Page 862 
in compensatory damages and $300,000 in punitive damages. The trial court entered a judgment on the jury verdict; and, after unsuccessful postjudgment motions, Willis appeals the judgment for damages against him, and Parker cross-appeals the judgment as a matter of law against him on his own malicious prosecution claim.
In reviewing the ruling of a trial court on a motion for judgment as a matter of law, "[t]he appellate court will accept the tendencies of the evidence most favorable to the nonmoving party and will resolve all reasonable doubts in favor of the nonmoving party." Ex parteBreitsprecher, 772 So.2d 1125, 1129 (Ala. 2000) (citing System DynamicsInt'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996)). Parker was the nonmoving party to all of Willis's motions for judgment as a matter of law — the successful one directed to Parker's malicious prosecution claim and the unsuccessful ones directed to Parker's conspiracy and abuse of process claims. Thus, we are accepting the tendencies of the evidence most favorable to Parker and resolving all reasonable doubts on issues of fact in Parker's favor.
Parker contended at trial, as he does on appeal, that Willis's first eviction action was tortious in two respects. First, it was filed with the motive of driving Parker out of business by evicting the tenant in Willis's building. Second, it was filed against the wrong defendant, Parker personally, instead of one of his corporations. We will assume, for the purpose of analysis only, that Parker has proved that Willis's motive was to drive Parker out of business by evicting Willis's tenant. The critical inquiries are whether this motive, or Willis's choice of defendant for his first eviction action, or both this motive and this choice, in the context of the other facts, complete either the tort of malicious prosecution or the tort of abuse of process.
Alabama statutory law grants a landlord an absolute right to terminate a month-to-month tenancy and to evict the tenant upon 10 days' notice. Section 35-9-5, Ala. Code 1975, provides:
 "In all cases of tenancy by the month or for any other term less than one year, where the tenant holds over without special agreement, the landlord shall have the right to terminate the tenancy by giving the tenant 10 days' notice in writing of such termination, and the landlord upon giving said notice for said time shall be authorized without further notice to the tenant to recover possession of the rented premises in an action of unlawful detainer."
(Emphasis added.) Then, § 35-9-80 provides:
 "In all cases where a tenant shall hold possession of lands or tenements . . . after his right of possession has terminated or been forfeited, and the owner of the lands or tenements shall desire possession of the same, such owner may by himself, his agent or attorney-in-fact or attorney-at-law demand the possession of the property so rented, leased, held or occupied; and if the tenant refuses or omits to deliver possession when so demanded, the owner, his agent or attorney-at-law or attorney-in-fact may go before the district court in the county in which the land lies, and make oath of the facts."
(Emphasis added.) Neither statutory law nor common law restricts a landlord in his motives for evicting his tenant. Special restrictions against eviction, such as anti-discrimination laws, do not apply to the facts of the case now before us. In fact, Parker does not contend that Willis did not have a legal right to evict a month-to-month tenant who refused to sign a long-term lease or to vacate the property after *Page 863 
repeated requests by Willis for the tenant to do either.
 Malicious Prosecution Claim
To establish a claim of malicious prosecution, Parker must prove "that the defendant [Willis] instigated without probable cause and with malice, a prior judicial proceeding against [Parker], that the prior proceeding ended in favor of [Parker], and that [Parker] suffered damages." Lumpkin v. Cofield, 536 So.2d 62, 64 (Ala. 1988). In BoothbyRealty Co. v. Haygood, 269 Ala. 549, 114 So.2d 555 (1959), this Court has defined probable cause in a malicious prosecution action in a civil proceeding:
 "In determining probable cause for the initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a chance that his claim may be held valid upon adjudication."
269 Ala. at 553, 114 So.2d at 558. "[T]he existence of probable cause is to be judged in light of the facts as they appeared when the underlying action was filed." Fina Oil Chem. Co. v. Hood, 621 So.2d 253, 257
(Ala. 1993). "`The question is not whether the . . . plaintiff [claiming malicious prosecution] was guilty of the thing charged, but whether the. . . defendant acted in good faith on the appearance of things.'" Eidsonv. Olin Corp., 527 So.2d 1283, 1285 (Ala. 1988) (quoting Birwood PaperCo. v. Damsky, 285 Ala. 127, 134-35, 229 So.2d 514, 521 (1969)) (some emphasis in original; some emphasis added).
 "Because malicious prosecution actions are not favored in the law, at the trial of the malicious prosecution action [the plaintiff] would have a strict burden of proving a negative — i.e., the complete absence of . . . probable cause for [the defendant] to bring the [underlying] action. [The plaintiff's] failure to prove the absence of probable cause would result in a judgment in favor of [the defendant] as a matter of law. For purposes of summary judgment, the converse of [the plaintiff's] burden of proof may be stated as follows: If there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action . . . against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate.
 "`If the facts on the issue of probable cause are not in dispute, whether such facts amount to probable cause is a question of law for the courts.' Hanson v. Couch, 360 So.2d 942, 945 (Ala. 1978); Gulf States Paper Corp. v. Hawkins, 444 So.2d 381
(Ala. 1983).
 "The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when the suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on the plaintiff's malicious prosecution count would be appropriate."
Eidson, 527 So.2d at 1285-86 (emphasis added; some citations omitted).
 "Malice in a malicious prosecution action has been defined as whatever is done willfully and purposely, whether the motive is to [injure the] accused, to gain some advantage to the prosecutor, or through mere wantonness or carelessness, if at the same time wrong and *Page 864 unlawful within the knowledge of the actor.
 "Malice may be inferred from the want of probable cause, or from defendant's conduct, where such conduct will admit of no other reasonable construction.
 "Furthermore, in an action for malicious prosecution, malice is an inference of fact, not of law, and must be determined by trier of facts as any other issue of fact is tried, and may be inferred from an absence of probable cause unless facts disclose that the defendant in the malicious prosecution action was acting in good faith."
Dillon v. Nix, 55 Ala. App. 611, 613-14, 318 So.2d 308, 310
(Ala.Civ.App. 1975) (emphasis added). When a party discovers his "mistake as to the proper party sued" and promptly corrects his error by discontinuing his suit against the wrong party, malice cannot be inferred from his actions for purposes of proving malicious prosecution. Dillon,55 Ala. App. at 614, 310 So.2d at 310.
Furthermore, this Court has said that "[w]hen probable cause exists, proof of the highest degree of malice gains the plaintiff nothing. Gulsby[v. Louisville N.R.R.,] 167 Ala. [122,] 128-29, 52 So. [392,] 394-95 [(1910)]. Yet, when probable cause is shown to be lacking, malice is essential to recovery." Delchamps, Inc. v. Bryant, 738 So.2d 824, 832
(Ala. 1999).
Therefore, in order for Parker to succeed on his malicious prosecution claim, he must have proved that Willis pursued the first eviction action both with a lack of probable cause and with the presence of malice. Parker has not established either of these essential elements.
Certain undisputed facts existing at the time Willis filed his eviction action against Parker establish probable cause. Willis filed the eviction action against Parker only after Willis had notified Parker that his month-to-month tenancy was terminated because he had repeatedly refused to comply with Willis's request to sign a long-term lease or to vacate the property. At the time Willis filed the eviction action against Parker, the only lease in existence was the oral lease that had been negotiated between Parker and Willis in the beginning of 1997. Parker himself negotiated the oral lease without disclosing that he was an agent acting on behalf of any principal.
 "`Generally when an agent, acting within his real or apparent authority, enters a contract on behalf of his principal, only the principal is bound and subject to suit on the contract. However, where the agent fails to disclose the fact that he acts for a principal or fails to disclose the identity of his principal, both the agent and the principal may be bound.'
 "The burden of disclosing the principal-agent relationship so that the agent can escape the liability of the principal is on the agent. The agent has the duty to disclose that he is acting in a representative capacity and to disclose the identity of his principal."
McLeod v. Thompson, 615 So.2d 90, 92 (Ala.Civ.App. 1992) (citations omitted; emphasis added). Thus Willis's identification of Parker personally as the tenant of the property and the proper defendant to be sued for eviction was warranted by the undisputed facts existing at the time Willis filed the first eviction action.
Even if Willis misidentified Parker, instead of Super Sav, Inc., as the proper defendant for eviction, his error in choosing the wrong party does not establish that he lacked probable cause to file the eviction action or that he filed the action with malice. Dillon, supra. When Willis filed the first eviction action, even *Page 865 
Parker himself, as the drafter of the assigned lease he erroneously invoked, did not know the true identity of the tenant. During the very pendency of the eviction action, Parker twice incorrectly swore that the tenant was "C.J.T., L.L.C. d/b/a Dadeville Super Sav." Thus, Willis's making a wrong choice of defendant would be de minimis in that malicious prosecution claims are not favored in the courts: "`[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.'" Eidson, 527 So.2d at 1284 (quoting Boothby RealtyCo. v. Haygood, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959)). The mistaken choice of defendant could hardly be deemed an element of the bad motive Parker ascribes to Willis, the motive of driving Parker out of business by evicting the tenant, for the choice of the wrong defendant would impede the eviction rather than promote it.
The eviction action cannot be deemed malicious even if Willis intended thereby to drive Parker out of business. Willis's absolute right to evict his month-to-month tenant upon 10 days' notice forecloses any conclusion that the eviction was "wrong and unlawful within the knowledge of the actor." Dillon, supra. Finally, because Willis dismissed the eviction action against Parker promptly upon Parker's showing Willis the assignment document naming "Super Sav, Inc.," as the assignee, malice cannot be inferred from Willis's choice, even if incorrect, of Parker as the first defendant for eviction. Dillon, supra.
 Abuse of Process Claim
To establish a claim of abuse of process, Parker must prove: "(1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice." C.C. J., Inc. v. Hagood, 711 So.2d 947, 950 (Ala. 1998). "`[T]he [ulterior motive] must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process wasnot intended by law to effect. . . .'" Demsey v. Denman, 442 So.2d 63, 65
(Ala. 1983) (quoting 72 C.J.S. Process § 120, pp. 1190-91 (1951)) (emphasis added). "`If the action is confined to its regular andlegitimate function in relation to the cause of action stated in the complaint there is no abuse. . . .'" Demsey, 442 So.2d at 65 (quoting 1 Am.Jur.2d Abuse of Process § 13 (1962)) (emphasis added).
 "[The defendant] is not liable for abuse of process simply because it prosecuted [the plaintiff] with an ulterior purpose. [The plaintiff] was required to further show that [the defendant] wrongfully used the criminal process against [the plaintiff]. At the outset of this analysis, it would be helpful to note the difference between an abuse of process claim . . . . and a malicious prosecution claim. Malicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued.
". . . .
 ". . . Merely proceeding with a . . . complaint and later agreeing to dismiss the charge cannot constitute a wrongful use because:
 "`[T]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion, even though with bad intentions. . . . [I]t is what is done in the course of negotiation, rather than the issuance or any formal use of process itself, which constitutes the tort.'
 ". . . [The defendant] cannot be liable for an abuse of process claim unless [he] somehow acted outside the boundaries of legitimate procedure after the charge had been filed." *Page 866 
Hagood, 711 So.2d at 950-52 (citations omitted; some emphasis in original; and some emphasis added).
 "When attempting to determine whether a plaintiff has proven malice in an abuse of process case, the focus is `not [on whether the defendant holds] ill will [against the plaintiff], or [is acting out of] spite, but rather, [whether] the [defendant] employed the process . . . for an end not germane thereto, for achievement of a benefit totally extraneous to or of a result not within its legitimate scope[.]' Stuart M. Speiser et al., The American Law of Torts, § 28:34, at 218 (1991). Once the plaintiff establishes an ulterior purpose and a wrongful use of process, `malice is made to appear in the eyes of the law.' Clikos v. Long, 231 Ala. 424, 428, 165 So. 394, 397
(1936).
 ". . . [M]alice in an abuse of process case involves not ill will or meanness, but the goal of achieving some result not properly achieved by the process undertaken. See Speiser, supra, § 28:34, at 218; see also Clikos, 231 Ala. at 428, 165 So. at 397."
Shoney's, Inc. v. Barnett, 773 So.2d 1015, 1025 (Ala.Civ.App. 1999) (emphasis added).
We assume, for the purpose of analysis, that the evidence supports a finding of the first essential element of abuse of process, the existence of an ulterior purpose — the purpose of driving Parker out of business. Even so, the evidence is insufficient to support a finding of either of the two remaining essential elements — a wrongful use of the eviction process and the existence of malice.
First, the record lacks proof of a wrongful use of the eviction process. Parker has not proved that Willis pursued the eviction action "to obtain a result which the [eviction] process was not intended by law to effect." Dempsey, supra. The direct result Willis sought to achieve by filing the eviction action was the eviction of the month-to-month tenant who remained in possession of Willis's property in spite of Willis's demand for return of the property. Willis had an absolute right to evict his month-to-month tenant, and he "confined [his eviction action] to its regular and legitimate function," even though he may have pursued the action with a bad motive. Dempsey, supra. Willis's choice of Parker as the defendant for the eviction action does not constitute wrongful use of process because, as already explained, when Willis filed his eviction action, he correctly regarded Parker as the tenant, and he promptly dismissed the suit against Parker upon Parker's showing him the assignment document naming "Super Sav, Inc.," as the assignee-lessee. Willis's "merely proceeding [with the initial eviction action] and later agreeing to dismiss the charge cannot constitute wrongful use of process because [t]here is no liability where the defendant has done nothing other than carry out the process to its authorized conclusion." Hagood,supra.
Second, Parker has not proven the essential element of malice. The record lacks substantial evidence that Willis pursued the eviction action against Parker "for an end not germane" to the eviction process.Shoney's, supra. The direct result Willis sought to achieve from the eviction action — the eviction of his month-to-month tenant — is "germane" to the eviction process and is a result "properly achieved by the process undertaken." Shoney's, supra. Likewise, Willis did not pursue the eviction process to achieve an end the eviction process was not meant to achieve. Shoney's, supra. Malice cannot be inferred from Willis's "ill will" or "bad intentions" for pursuing the eviction action against Parker because the direct result Willis sought to achieve by his eviction action was eviction of his month-to-month tenant — a result authorized and intended by the eviction law. Dempsey,supra. *Page 867 
Finally, for two of the reasons explained in our discussion of the malicious prosecution claim, malice cannot be inferred from Willis's choice of Parker as the defendant. First, the choice was correct; and, second, any mistake in the choice was de minimis.
 Conspiracy Claim
A conspiracy cannot exist in the absence of an underlying tort. "[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." Jones v. BP Oil Co.,632 So.2d 435, 439 (Ala. 1993). Because the record does not support Parker's malicious prosecution claim or his abuse of process claim, his conspiracy claim is invalid.
 Conclusion
For the reasons stated, we conclude that the trial court correctly granted Willis's motion for judgment as a matter of law directed to Parker's malicious prosecution claim but erroneously denied Willis's motions for judgment as a matter of law directed to Parker's conspiracy and abuse of process claims. Therefore we affirm the judgment as a matter of law in favor of Willis on the malicious prosecution claim, and we reverse the judgment on the jury verdict in favor of Parker on the conspiracy and abuse of process claims and render a judgment in favor of Willis on those claims. This disposition pretermits any discussion of Willis's challenge to the punitive damages award against him.
1991115 — REVERSED AND RENDERED.
1991116 — AFFIRMED.
Moore, C.J., and Lyons, Woodall, and Stuart, JJ., concur.